IN THE CIRCUIT COURT OF THE FIFTH JUDICIAL CIRCUIT
IN AND FOR MARION COUNTY, FLORIDA

IN RE: THE MATTER OF

GERALD SCARDAVILLE and
HELEN SCARDAVILLE,

    Plaintiffs,

v.

ILLINOIS UNION INSURANCE
COMPANY,

    Defendant.

CASE NO.: 04-1252-CA-G



## COMPLAINT

COMES NOW the Plaintiffs, GERALD SCARDAVILLE and HELEN SCARDAVILLE, by and through their undersigned attorney, and sue the Defendant and in support thereof allege as follows:

1.     This is an action for damages in an amount greater than $15,000.00.

2.     Plaintiffs are, and have been at all times material to this action, residents of Marion County, Florida.

3.     Illinois Union Insurance Company, hereinafter referred to as "Defendant", is a foreign corporation doing business in the State of Florida.

4.     The Defendant is in the business of providing errors and omissions insurance to security broker/dealers and their agents.

5.     The Defendant provided errors and omissions insurance to A & F Financial Securities, Inc., 120 E. 4th Avenue, Mt. Dora, FL 32757, hereinafter referred to as A & F, and to specifically listed registered representatives of A & F.

6.     The insurance provided by the Defendant to A & F, and its' listed registered representative, provided errors and omissions insurance for acts committed by the insured while acting in their capacity as a "broker" - "dealer", "registered investment advisor", "financial planner",


COPY

"life insurance agent", and/or "registered representatives". The Defendant's policy number of this coverage is CRL G2 1071705.

7.     The effective date of policy number CRL G2 1071705 was July 11, 2001 at 12:01 a.m. through July 11, 2002 at 12:01 a.m.

8.     Charon M. Bogner, hereinafter referred to as "Bogner", was a registered investment advisor and agent of A & F during the period July 11, 2001 through July 11, 2002.

9.     Bogner, of 120 E. 4th Avenue, Mt. Dora, FL 32757, is one of the specifically listed registered representatives of A & F whose activities were insured by policy number CRL G2 1071705.

10.    Bogner, in her capacity as a registered investment advisor and agent of A & F, sold various financial products and provided investment advice to the Plaintiffs.

11.    On or about November 9, 2001, the Plaintiffs filed an Arbitration action before the National Association of Securities Dealers against Bogner, alleging that Plaintiffs suffered financial losses as a result of negligent advice and services provided to the Plaintiffs by Bogner, in her capacity as a registered investment advisor. A copy of the Statement of Claim is attached hereto as Exhibit "1".

12.    Plaintiffs and Bogner resolved NASD Arbitration Case Number 01-06368, by Settlement Agreement, a copy of which is attached hereto as Exhibit "2".

13.    In accordance with Florida Statutes, Plaintiffs filed a confirmation action in the Circuit Court of the Fifth Judicial Circuit in and for Marion County, Florida, Case Number 03-975-CA, seeking to confirm the Settlement Agreement in NASD Arbitration Case Number 01-06368.

14.    On or about the 3rd day of October, 2003, the Honorable Jack Singbush entered a Judgment in favor of the Plaintiffs against Bogner in the amount of $174,000.00 plus interest from that date forward. A certified copy of that Final Judgment is attached hereto as Exhibit "3" and incorporated by reference herein.

15.    Upon information and belief, Bogner contacted the Defendant through its agent at the time that she was served with the complaint in NASD Arbitration Case Number 01-06368, and made a claim for coverage pursuant to her insurance policy.

2

08/04/2004 16:34 TEL
08/03/2004 14:33 FAX 8507656056
Case 5:04-cv-00389-WTH-GRJ   Document 2   Filed 08/25/04   Page 3 of 17   PageID 9
ACE APL CLAIMS
008/022
007

16.     The Defendant improperly denied coverage to Bogner when her demand for coverage was made, and elected not to participate in the underlying litigation.

17. .    The Defendant is contractually obligated to satisfy the judgment rendered against Bogner by the Circuit Court of the Fifth Judicial Circuit in and for Marion County, Florida.

18.     Plaintiffs are intended third party beneficiaries of the insurance contract between the Defendant and Bogner.

19.     As an intended third party beneficiary to the insurance contract between the Defendant and Bogner, Plaintiffs are entitled to bring this action directly against the Defendant.

WHEREFORE, Plaintiffs demand judgment against the Defendant in the amount of $174,000.00 plus interest at the legal rate from October 3, 2003, until paid in full. Plaintiff further demands that this matter be tried by Jury.

LANDT AND LANDT

By: _____

Robert E. Landt, Esquire
Florida Bar No. 613002
230 NE 25th Ave., Suite 200
Ocala, FL 34470
(352) 368-2242
(352) 368-7772 (fax)

3

# THE NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC.

IN RE: THE MATTER OF                             CASE NO.:

GERALD SCARDAVILLE and
HELEN SCARDAVILLE,

      Claimants,

vs.

CHARON M. BOGNER, C. M. BOGNER
AND ASSOCIATES, P.A., and
USALLIANZ SECURITIES, INC., f/k/a
LIFEUSA SECURITIES, INC.,

      Respondents.

_____/

## STATEMENT OF CLAIM

### I.   SUMMARY OF THE CLAIM

This is an action for damages in the amount of $198,606.00, for violation of the Florida Securities Investor Protection Act, the Securities Act of 1934, the Securities Exchange Act of 1933, NASD Rules and State and Federal law for misrepresentation, unsuitability and negligent supervision. The Claimants, Gerald and Helen Scardaville (hereinafter "Scardavilles") are a retired couple who, at all times material, were living in Lady Lake, Florida. The Scardavilles met the Respondent, Charon M. Bogner (hereinafter "Bogner") at a social club in the community in which they reside. Bogner held herself out to be an "accredited estate planner" who also offered her clients investment advice and the ability to purchase securities through the Respondent, LIFEUSA Securities, Inc., k/n/a USALLIANZ Securities, Inc. (hereinafter "USALLIANZ").

Mr. Scardaville retired from Anheuser-Busch in 1998 where he had been employed for the previous thirty-nine (39) years. During that time, he had accumulated 5,066 shares of Anheuser-Busch stock which was held in a 401K plan at Anheuser-Busch. The Scardavilles' stated investment objective was preservation of their life-savings to be conservatively invested to

EXHIBIT "1"

supplement their retirement income. The Scardavilles had no prior investment experience other than the payroll deduction purchase of the Anheuser-Busch stock.

Bogner sold all of the shares of Busch stock and invested $345,922.10 of the proceeds of that sale into various mutual funds contained within a variable annuity contract with Nationwide Insurance Company. Bogner promised that this investment plan would allow the Scardavilles to make no less than fourteen percent (14%) annually and that they would be able to withdraw $2,000.00 per month and never touch their principal. Bogner failed to inform the Scardavilles that she had tied up their entire life-savings in an annuity plan that had substantial penalties for any withdraw during the first seven (7) years of the contract. Moreover, she failed to consult with the Scardavilles as to the placement of the annuity funds within the family of mutual funds available and concentrated the vast majority of the Scardavilles' funds into high-risk equity and junk bond mutual funds. Had Bogner disclosed the true nature and features of the annuity contract and/or discussed the potential risks associated with the mutual funds selected, the Scardavilles would not have invested.

As a direct and proximate result of the omissions of material fact and misrepresentations of material fact, coupled with the selection of an unsuitable investment vehicle for the Scardavilles, they have suffered a devastating loss of $164,014.00 of their life-savings. Claimants demand a rescission of this transaction, plus legal interest thereon, plus all costs associated with this action including, a reasonable attorney's fee.

## II.    STATEMENT OF THE CASE

Gerald and Helen Scardaville moved to Florida in 1998 to a community known as "The Villages". Gerald is 65 years old and Helen is 71 years old. Gerald retired from Anheuser-Busch in 1998 having worked there for thirty-nine (39) years. They both have high school educations

2

and had lived in New Jersey prior to moving to Florida. Neither of the Scardavilles had any education, background, or prior investment experience prior to meeting Bogner and had no ability to assess the benefits or risks associated with the investment plan recommended. Prior to meeting Bogner, other than the purchase of Anheuser-Busch through a payroll deduction plan with his employer, the Scardavilles had never invested.

When the Scardavilles moved to The Villages, they became involved in the local "New Jersey Club" one of a series of social clubs centered around home states from which retirees had moved to Florida. Bogner attended most of the various state club meetings at The Villages. During one of the New Jersey Club meetings, Bogner introduced herself to the Scardavilles and indicated that she was a "financial adviser" with considerable education, background, and experience in managing investments for retirees such as the Scardavilles. She presented them with an impressive resume which indicated that she was an "accredited estate planner" and had various professional designations after her name including CLU, CFSC, AEP none of which were understood by the Scardavilles.

After their initial introduction, Bogner met with the Scardavilles on several occasions at which the Scardavilles conveyed a number of pertinent facts. First, Helen was in ill health had contracted non-Hotchkins Lymphoma and suffered from Ulcerative Colitis. Gerry has a heart condition and is diabetic; both were concerned that they might need immediate access to any funds invested for the purpose of supplementing and obtaining adequate health coverage. Without knowing the specific term, the Scardavilles were clearly interested that any investment would have sufficient liquidity to allow them access for emergency purposes.

Secondarily, the Scardavilles informed Bogner they were extremely conservative and had no prior investment experience. Mr. Scardaville thought that of the Three Hundred Forty-Five

3

Thousand Dollars ($345,000.00) they had to invest the vast majority should be put in CD's or government bonds and that he desired to take a small portion of the money to buy a new car since he had never owned a new car in his life.

Bogner assured the Scardavilles she "knew exactly what to do" and "would handle everything". She promised the Scardavilles a "big return" much better than "CD's and government bonds". Bogner promised the Scardavilles they would make fourteen percent (14%) interest and that they would be able to take Two Thousand Dollars ($2,000.00) per month from the account and "never touch their principal". She discouraged Mr. Scardaville from buying a new car and told him that he would be able to afford one from the earnings on his investment at a later time. She also informed the Scardavilles that it was mandatory that they sell their Anheuser-Busch stock no later than sixty (60) days from the date Mr. Scardaville took receipt of the shares. Bogner wrote them a letter on September 30, 1999 telling them that the stock must be sold no later than November 5, 1999.

Once the stock was sold, Bogner took one hundred percent (100%) of the proceeds of the sale totalling Three Hundred Forty-Five Thousand Nine Hundred Twenty-Two and 10/100 Dollars ($345,922.10) and rolled it into "an IRA". Mr. Scardaville understood that it was necessary to roll the money into an IRA account to avoid tax consequences and that he would be buying securities through LIFEUSA pursuant to decisions that had been made by Bogner.

In December, 1999, Mr. Scardaville received his first account statement from "The Best of America" issued by Nationwide Life Insurance Company. He was immediately confused as to why his account statement had been issued by a Life Insurance Company. He contacted Bogner regarding this question and was informed by her that "this was the best way to handle his situation". Approximately forty-six percent (46%) of the money was put into the Dreyfus

4

Capital Appreciation portfolio; thirty percent (30%) was placed in the FID Equity Income portfolio; and twenty-four (24%) was placed in FID High Income portfolio. The Scardavilles had absolutely no concept of mutual funds and how they operated much less what the specific investment objectives were of the mutual funds purchased and the risks associated with owning them.

By the end of February, 2000 the account had diminished in value to approximately Three Hundred Fifteen Thousand Dollars ($315,000.00) resulting in a net loss of approximately Twenty-Eight Thousand Dollars ($28,000.00). The Scardavilles were concerned by this loss in so short a period of time. They contacted Bogner and reiterated that the money could not be risked and that they were extremely worried about the Twenty-Eight Thousand Dollar ($28,000.00) loss. At that time, the Scardavilles considered withdrawing their money from the account and first learned through Bogner that there were substantial penalties associated with any early withdraw. Upon further inquiry, the Scardavilles discovered, to their astonishment, that the money could not be withdrawn from their investment plan for seven (7) years without a substantial early withdrawal penalty. They were infuriated that Bogner had tied up their money for such a long period of time without informing them prior to the investment. Bogner attempted to placate the Scardavilles by informing them that they could withdraw ten percent (10%) of their funds each year without penalty so that if they needed access to some of the money it was available. The Scardavilles demanded that Bogner adjust their portfolio in a manner to better protect their life-savings. Bogner assured them that she would make the proper adjustments to their portfolio.

In response to the request of the Scardavilles, Bogner then moved the Scardavilles' money in March, 2000 by liquidating the capital appreciation, equity income, and high income portfolios

5

originally purchased and exchanging them for the JAS Capital Appreciation portfolio, the Strategic Growth National Strategic Growth Fund portfolio and placed One Hundred Fifty-Five Thousand Two Hundred Eleven Dollars (155,211.00) of their money in the Oppenheimer Aggressive Growth Fund. By the end of May, 2000, (less than sixty (60) days later) the Scardavilles had suffered a One Hundred Thousand Nine Hundred Twenty-Five Dollar ($100,925.00) loss, Fifty-Two Thousand Dollars ($52,000.00) of which was attributable to the Aggressive Growth Mutual Fund. The Scardavilles were stunned at the enormity of this loss. When they confronted Bogner with the financial disaster she had visited upon them she had no viable option for them to pursue other than to "stick it out". The Scardavilles discontinued their monthly withdrawals in an effort to preserve their remaining funds. By year-end 2000, the account value had diminished to Two Hundred Ten Thousand Three Hundred Dollars ($210,300.00).

In the first part of 2001, Bogner again changed the portfolio moving a portion of the money into a Government Bond Fund and a high income bond fund both of which incurred additional losses. In spite of the Scardavilles' continued sacrifices in not withdrawing any money from the account its value continued to diminish and based upon their last statement dated September 30, 2001, had a value of $147,316.00 representing a total loss of $198,606.00.

Bogner owed a duty to the Scardavilles to design an investment plan that was reasonably calculated to meet their stated investment objectives, i.e. preservation of their life-savings with a secondary objective of producing income. Moreover, Bogner owed the Scardavilles a duty to adequately disclose the risks associated with any investment recommendation she made to enable them to make an informed decision about the investment plan. Bogner breached this duty to the Claimants in that she failed to inform the Claimants of the significant limitations imposed by

6

placing their money in an annuity contract; failed to disclose to the Claimants that the use of an annuity provided no additional tax or investment benefits; failed to inform the Claimants that a substantial penalty would be incurred for seven (7) years by selecting an annuity vehicle; arbitrarily limited the Claimants' investment selections to the mutual funds offered by the annuity purchased; and otherwise omitted to disclose material facts and misrepresented material facts which, if had been known, would have altered the Scardavilles' decision to invest.

Additionally, Bogner further breached her duty to the Scardavilles in that, in an attempt to recoup initial losses, she consistently reformulated the underlying investments within the annuity to increasingly more aggressive and higher risks mutual funds without disclosing same to the Claimants. The investments selected within the annuity were totally unsuited to the investment objectives of the Scardavilles.

LIFEUSA owed the Scardavilles a duty to monitor the investment advice offered by their agent, Bogner. LIFEUSA breached their duty to the Scardavilles in that they failed to obtain appropriate documentation regarding the Scardavilles' investment objectives or, alternatively, negligently failed to supervise their employee, Bogner in the selection of an investment plan reasonably suited to meet the stated investments objectives; breached their duty to the Scardavilles in that they failed to supervise Bogner; failed to adequately monitor their account; and otherwise failed to intervene and assure that their agent and employee, Bogner, did not make misrepresentations of fact and omit material facts in the sale of securities all within the course and scope of her employment.

As a direct and proximate result of the omissions of material fact and misrepresentations of fact by Bogner, coupled with her selection of unsuitable securities and a breach of her fiduciary responsibility to select investments adequately designed to meet stated investment objectives of

7

the Scardavilles, coupled with the failure of LIFEUSA to supervise their employee, the Scardavilles have suffered a devastating loss of $198,606.00.

## III.  CONCLUSION

The foregoing recitation of facts reveals a total abrogation of all statutory and NASD obligations by the Respondents to the Claimants.  As a direct and proximate result of the misrepresentations of fact, omissions of material fact, coupled with the negligent supervision of their employee, the Scardavilles have suffered a devastating loss of $198,606.00.

The Scardavilles demand a rescission of all transactions, plus legal interest thereon, a recoupment of all costs associated with bringing this action including a reasonable attorney's fee.

Claimants respectfully request the appointment of a three member panel and request that this matter be set for hearing in Tampa, Florida at the panel's earliest convenience.

Dated this ___/9th___ day of November, 2001.

Respectfully submitted,

Stephen D. Spivey, Esquire
Florida Bar No.:  998140
3610 S.E. Ft. King Street
Ocala, FL 34470
(352) 622-8828
(352) 622-5486 - Facsimile
Attorney for the Claimants

8

# SETTLEMENT AGREEMENT

1.      The Parties to this Settlement Agreement are the Claimants, Gerald Scardaville and Helen Scardaville, his wife, and the Respondents, Charon M. Bogner, and C. M. Bogner & Associates, P.A., respectively, of that certain National Association of Securities Dealers (NASD), Inc., Arbitration Case Number 01-06368.

2.      The Parties hereto desire to enter into an amicable settlement of all disputes arising between them in the above-referenced matter.

3.      In furtherance of the resolution of all issues in this case the Parties do hereby agree as follows:

A.      Charon M. Bogner, will stipulate to the entry of a Judgment in a civil action brought in Circuit Court of the State of Florida, which action will be a confirmation of this settlement reached in this NASD administrative matter.

> 1.      The civil judgment will be in an amount of $174,000.00, but without any claim for costs, attorney's fees, or interest.
>
> 2.      Gerald Scardaville and Helen Scardaville will not record the civil judgment in any of the official records of any county or of the State of Florida.
>
> 3.      Gerald Scardaville and Helen Scardaville will take no action to enforce, collect, or satisfy the judgment against Charon M. Bogner, and will refrain from reporting either the fact or the content of the civil judgment.
>
> 4.      The parties to the civil action will stipulate or jointly move, post-judgment, for the Court to seal the file, until further order of the Court.

EXHIBIT "2"

5.    In the event that Gerald Scardaville and Helen Scardaville recover on the judgment against Charon M. Bogner, any and all amounts in excess of $150,000.00 they will reimburse to Charon M. Bogner.

6.    Upon any recovery by Gerald Scardaville and Helen Scardaville on the Circuit Court Judgment for which Charon M. Bogner has stipulated to entry against her, from any insurer and/or a broker-dealer, but in any event after 3 years from the date of Judgment by the circuit court; Gerald and Helen Scardaville will execute a cancellation-satisfaction of the Judgment of the circuit court against Charon M. Bogner.

B.    Gerald and Helen Scardaville will dismiss, without comment, the instant claim before the NASD Dispute Resolution, Inc.

C.    Charon M. Bogner will assign to Gerald and Helen Scardaville any and all claims, demands, choses in action, rights of action, and/or causes of action which she or her company, C. M. Bogner & Associates, P.A. may have against A & F Financial Securities, Inc. (of 120 E. Fourth Avenue, Mount Dora, Florida 32757), and/or H. Lester Ariail, in connection with the claims of liability asserted by Gerald Scardaville and Helen Scardaville, whether as asserted directly by them, or Indirectly by and through another party, such as USAllianz Securities, Inc.

D.    Charon M. Bogner will cooperate with Gerald Scardaville and Helen Scardaville, and their attorney, in any action brought by them against A & F Financial Securities, Inc., H. Lester Ariail, or any Insurer(s) of them, or any combination thereof, to the fullest extent provided by any lawful process.

E.    The parties shall cooperate in executing any and all such documents and

instruments, and taking such other and further steps, as may be necessary to effectuate

this settlement agreement.


Gerald Scardaville

Helen Scardaville


Stephen D. Spivey, Esquire
Florida Bar Number: 998140
3610 SE Ft. King Street
Ocala, FL 34470
Attorney for Plaintiffs


Charon M. Bogner

Russell W. LaPeer
Florida Bar no. 200530
Landt, Wiechens, LaPeer, & Ayres
445 N.E. 8th Avenue
Ocala, FL 34470
Attorneys for Defendant

No Chg Civil

IN THE CIRCUIT COURT OF THE FIFTH
JUDICIAL CIRCUIT IN AND FOR
MARION COUNTY, FLORIDA

IN RE: THE MATTER OF                          CASE NO.: 03-975-CA

GERALD SCARDAVILLE and
HELEN SCARDAVILLE;

        Plaintiffs,

vs.

CHARON M. BOGNER,

        Defendant.

**FINAL JUDGMENT**

THIS CAUSE, having come on before the Court for entry of Final Judgment, and the Court

having reviewed the file and being otherwise advised in the premises, the Court finds as follows:

1.    This Court has jurisdiction pursuant to Florida Statute Chapter 682.

2.    The parties have settled their National Association of Securities Dealers Arbitration

Case Number 01-06368 and are entitled to have their Settlement Agreement confirmed by this Court.

3.    The Plaintiffs are entitled to Judgment against the Defendant in the amount of One

Hundred Seventy-Four and No/100 ($174,000.00) Dollars plus interest from this date forward.

IT IS NOW THEREFORE,

ORDERED AND ADJUDGED THAT:

1.    The Plaintiffs, Gerald and Helen Scardaville of 1113 Saldivar Road, Lady Lake,

Florida, 32159 recover from the Defendant, Charon M. Bogner, 120 East 4th Avenue, Mt. Dora,

Florida 32757 the sum of One Hundred Seventy-Four and No/100 ($174,000.00) Dollars that shall

bear interest at the legal rate from this date forward, for all of which let execution issue.

DAVID R. ELLSPERMANN, CLERK OF COURT  MARION COUNTY
DATE: 10/08/2003  11:21:38 AM
FILE #: 2003133890  OR BK/PG 03546/1441
RECORDING FEES 0.00

EXHIBIT "3"

2.      The parties shall comply with the terms and conditions of their Settlement Agreement

resolving National Association of Securities Dealers Arbitration Case Number 01-06368.

DONE AND ORDERED in Chambers in Ocala, Marion County, Florida. this _3_ day of

_October_ , 2003.

Circuit Judge

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy was furnished via U.S. Mail this _3_

day of _October_ 2003 to:

Russell W. LaPeer, Esquire
Landt, Wiechens, LaPeer, & Ayres
445 NE 8th Avenue
Ocala, FL  34470

Stephen D. Spivey, Esquire
3610 SE Ft. King Street
Ocala, FL  34470

Judicial Assistant

Certified A True Copy
of _2_ page document
this _10_ day of _July_ 2024.
DAVID R. ELLSPERMANN
Clerk of Court
BY: _____ D.C.

FILE: 2003153890
OR BOOK/PAGE 03546/1442

# STATE OF LOUISIANA
# SECRETARY OF STATE

HELEN CUMBO
ADMINISTRATOR
COMMERCIAL DIVISION

7/26/04

LEGAL SERVICES SECTION
P.O. BOX 94125, BATON ROUGE, LA 70804-912
(225) 922-0415

ACE AMERICAN INSURANCE COMPANY
C/O ACE USA, TL35M
SAVERIO M. ROCCA, ESQUIRE
1601 CHESTNUT ST.
PHILADELPHIA, PA  19103

SUIT NO: 915553
15TH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE

RECEIVED
AUG 0 2 2004
ACE INCOMING LEO

MARSH ENGINEERING, INC., ETAL
vs
ERNEST L. PARKER, ETAL

Post-it® Fax Note 7671  Date 8/3  # of pages ►
To NY Prof    From ACE helm -
Co./Dept. List    Co.
Phone # Atty Prof List    Phone # 800 433 0385
Fax # 746 458 6906    Fax #

Dear Sir/Madam:

I am enclosing citation served in regard to the above entitled proceeding.
Please call the attorney that filed this document if you have any questions
regarding this proceeding.  If you received this document in error, please
return it to the above address with a letter of explanation.

Yours very truly,

W. FOX McKEITHEN
Secretary of State

Served on: HELEN CUMBO
Served by: J.C. ARCENEAUX

Date:  7/23/04 at  3:00 PM
Title: DEPUTY SHERIFF

| Received | Number | Date | Paid By | Amount |
|---|---|---|---|---|
| CHECK/M.O. | 305177 | 7/16/04 | COC (LAFAYETTE) | 25.00 |

RG

# NO. 554318

